# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-326V**

| | |
|---|---|
| KRISTIN MAECKEL,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 28, 2026 |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Mark Kim Hellie, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On March 7, 2023, Kristin Maeckel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on November 14, 2020. Petition at 1. The parties were unable to informally resolve this matter, so they agreed instead to submit this dispute for resolution at an expedited "Motions Day" hearing, which took place on May 29, 2026

**For the reasons set forth below, I find that Petitioner is entitled to compensation. I also find that Petitioner is entitled to damages of $43,000.00 for pain and suffering.**

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

On October 4, 2024, Respondent filed a Rule 4(c) Report opposing compensation, arguing that Petitioner had failed to meet the onset requirement for a Table injury. Respondent's Rule 4(c) Report ("Report"), ECF No. 31. Petitioner filed a Motion for a Ruling on the Record and damages on April 13, 2025. Petitioner's Motion for Ruling on the Record Regarding Entitlement and Damages ("Mot."), ECF No. 33. On May 12, 2025 Respondent filed a Response. Respondent's Response to Petitioner's Motoi for a Ruling on the Record and Damages Brief ("Resp."), ECF No. 34. Petitioner filed a reply on May 20, 2025. Petitioner's Reply to Respondent's Response to her Motion for Ruling on the Record ("Reply"), ECF No. 35.

## II. Relevant Factual History

On November 14, 2020, Petitioner received a flu vaccine in her left shoulder. Ex. 2 at 2. Throughout the month of December, Petitioner was traveling in Germany. Ex. 1 at 2. Petitioner first reported shoulder pain two months later, on February 17, 2021, to orthopedist Dr. Ashok Reddy. Ex. 8 at 71.[3] She stated that the pain began after the flu vaccine. Petitioner was diagnosed with shoulder pain, bursitis, and a steroid injection was administered. *Id.* at 73.

On May 26, 2021, Petitioner was seen for a follow-up regarding ongoing left shoulder pain. Ex. 8 at 87-88. She stated she had no pain in her left shoulder "until following flu shot at CVS in November 2020." *Id.* at 88. An MRI showed tendinopathy, effusion, and signs of bursitis. *Id.* at 77. Petitioner was seen again on June 10, 2021, for continued shoulder pain Ex. 8 at 66-67. She repeated that she had no pain until the November flu vaccine. Ex. 8 at 67. Additionally, she stated the February steroid injection offered only minimal relief. *Id.*

Between June 18 and August 13, 2021, Petitioner attended nine physical therapy sessions and four acupuncture appointments. Ex. 4 at 8-14; Ex. 3 at 10; Ex. 9. At the initial acupuncture session the record states "shoulder pain left side. Nov 2020 flu shot." Ex. 4 at 14. Her pain was initially described as five out of ten, and by August of 2021 it was reduced to three out of ten. Ex. 9 at 5, 27.

Petitioner was last seen for shoulder pain on December 6, 2021. Ex. 3 at 12. At that time her arm was reportedly feeling better even without the use of over the counter pain medication. *Id.*

---

[3] On January 25, 2021, Petitioner saw her OB/GYN, which does not reference shoulder pain. Ex. 6 at 11.

## III. Legal Standards for SIRVA

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## IV. Factual Findings Regarding a Table SIRVA

Review of the entire record reveals that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### A. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### B. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the November 14, 2020 vaccination. Petitioner first reported shoulder pain on February 17, 2021, stating that her left shoulder pain began after a flu vaccine. Ex. 8 at 71. Further, she repeatedly and consistently linked her shoulder pain to this vaccination. *See, e.g.*, Ex. 8 at 88 (record from May 26, 2021, noting Petitioner had no pain in her shoulder until a flu vaccine received in November 2020); Ex. 4 at 14 (record from July 7, 2021 stating "[s]houlder pain left side. Nov 2020 flu shot.").

Respondent argues that Petitioner alleges immediate onset, but failed to report shoulder pain on January 25, 2021 when she was seen by an OB/GYN specialist. Report at 4. While Petitioner did delay in seeking treatment and Respondent is correct in that she did not report pain at the first appointment, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. Additionally, it is not surprising that Petitioner did not mention shoulder pain when she saw a specialist for unrelated care. As noted above, Petitioner reported pain after her vaccination, and repeatedly linked her shoulder pain to the November 14, 2020 vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### C. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### D. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim.

### E. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on November 14, 2020, in the United States. Ex. 2 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1 at 4; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## V. Damages

Petitioner argues that she is entitled to $70,000.00 for pain and suffering. Mot. at 22; Reply at 6. Respondent counters that a lower award of $30,000.00 is appropriate for pain and suffering. Resp. at 12.

After listening to the arguments of both sides, I orally announced my ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the May 29, 2025 hearing. An official recording of the proceeding was taken by a court reporter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

In a recent decision I discussed at length the legal standards to be considered in determining damages and prior GBS compensation within SPU. I incorporate herein my prior discussion in Section II of *Ashcraft v. Sec'y of Health & Hum. Servs.*, No. 23-1885V, 2025 WL 882752, at *2-4 (Fed. Cl. Feb. 27, 2025) to the instant Ruling and Decision. Additionally, the official recording of my oral ruling includes my discussion of various comparable cases as well as specific facts relating to Petitioner's medical history and experience that further informed my resolution of this matter.

The evidence indicates that Ms. Maeckel suffered a mild SIRVA for approximately one year. She delayed seeking treatment for over three months (ex. 8 at 71), which undermines the severity of her injury because it speaks to the fact that her injury was not so severe that she needed to seek medical care immediately. Petitioner's treatment

period occurred over six-months, consisting of nine physical therapy sessions, acupuncture, a cortisone injection, and diagnostic testing. Her pain was mild-to-moderate, described as three-to-five out of ten. Ex. 9 at 5, 27. She may have had some lingering pain when she stopped treating, as she reported she was feeling better as of December 6, 2021. Ex. 3 at 12.

The overall severity of the injury at issue herein is thus not high enough to warrant the $70,000.00 requested by Petitioner. I note that the SIRVA cases cited by Petitioner involved more significant treatment over longer periods of time, as noted by Respondent in his briefing. Reply at 11-12.

Two cases more analogous to the circumstances herein are *Valentine v. Sec'y of Health & Hum. Servs.*, No. 22-0340V, 2025 WL 1707733, at *7 (Fed. Cl. May 16, 2025) (awarding $45,000 for pain and suffering) and *Baskin v. Sec'y of Health & Hum. Servs.*, No. 21-2207V, 2025 WL 1891826, at *10 (Fed. Cl. June 2, 2025) (awarding $46,784.18 for pain and suffering).

The *Valentine* petitioner had a mild SIRVA and treated for approximately eleven months, had one cortisone injection and eight physical therapy sessions. Although she reported a high pain rating of nine out of ten at her first appointment, a cortisone injection that day improved her pain levels and range of motion. Thereafter, her pain ratings were lower. Additionally, she waited two months before seeking care. *Valentine*, 2025 WL 1707733 at *7-8. Similarly, the petitioner in *Baskin* suffered a relatively mild SIRVA that persisted for almost fifteen months but delayed two months prior to seeking care. The treatment consisted of a cortisone injection and eleven physical therapy sessions over a three-month period. *Baskin*, 2025 WL 1891826 at *10-11.

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$43,000.00** for actual pain and suffering is reasonable and appropriate in this case.

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation. Further, I award Petitioner a lump sum payment of $43,000.00 for actual pain and suffering to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

**This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.**[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.